# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

CARL DAVIS, JR.,
ADC #80431                                                    PLAINTIFF

V.                              5:16CV00039 BSM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction, et al.                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

# I.  Introduction

Carl Davis, Jr. ("Davis") is a prisoner in the Varner Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* § 1983 action alleging that Defendants ADC Director Wendy Kelley ("Kelley"), ADC Assistant Director of Health Rory Griffin ("Griffin"), Infirmary Manager Amanda King ("King"), Nurse Wanetta Clowers ("Nurse Clowers"), Warden Randy Watson ("Watson"), Captain Scott Taylor ("Taylor"), Captain Sharon Williams ("Williams"), and Nurse Amanda Gray ("Nurse Gray") failed to provide him with adequate medical care for a broken bone in his foot and retaliated against him for filing grievances complaining about the medical care he received for that injury. *Docs. 2 & 8.*

The parties have filed Cross-Motions for Summary Judgment.[1] Before addressing the merits of these Motions, the Court will summarize the relevant facts giving rise to Davis's claims:[2]

---

[1] Davis has filed a Motion for Summary and Affidavits. *Docs. 50 & 54.* Defendants Griffin, Kelley, Taylor, Watson, and Williams ("ADC Defendants") have filed a Response. *Doc. 55.* Defendants Clowers, Gray, and King ("Medical Defendants") have also filed a Response. *Docs. 56.*

The ADC Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Facts, and two Replies. *Docs. 73, 74, 75, 79, & 88.* Davis has filed three Responses, two Statements of Facts, a Brief in Support, and Affidavits. *Docs. 77, 78, 80, 81, 82, 87, & 92.*

The Medical Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Facts, and a Reply. *Docs. 83, 84, 85 & 93.* Davis has filed two Responses, a Brief in Support, and a Statement of Facts. *Docs. 89, 90, 91 & 94.*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the

2

1.     On March 25, 2015, at approximately 2:30 p.m., Davis injured his right foot while playing basketball at the Varner Unit. Davis asked Taylor, who was the shift supervisor, for permission to go to the infirmary. Taylor, who does not have any medical training, determined that there was no obvious "emergency" or "urgent" need for medical care because Davis was "able to carry himself by his own power and not bleeding."  Taylor instructed Davis to return to his barrack and submit a sick call request seeking permission to go to the infirmary for evaluation of his foot injury. Davis did so.  *Doc. 2 at 29 & 37; Doc. 73, Ex. 8; Doc. 85, Ex. 1 at 1.*

2.     Approximately three hours later, Davis was taken to the prison infirmary.  A non-party nurse: (a) determined that Davis's foot injury was "minor;" (b) gave him ibuprofen, an ace bandage, and crutches; (c) issued a seven day script releasing Davis from work; and (d) ordered an x-ray of Davis's right foot.  *Doc. 85, Ex. 1 at 2-3.*

3.     On April 1, 2015, an x-ray revealed that the fifth metatarsal in Davis's right foot was fractured, with mild displacement and intra-articular extension. *Doc. 85, Ex. 1 at 4- 5.*

---

moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial.  *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

4.      On April 7, 2015, Nurse Clowers explained the x-ray results to Davis, ordered a second x-ray, and scheduled an orthopedic consult.   However, she did *not* renew Davis's "no work" script.   This required Davis to return to his job as a shower porter, where he cleaned toilets and showers for approximately one and a half hours on April 5, April 6, April 7, April 9, April 12, April 13, April 14, April 15, and April 21.   It is *undisputed* that Davis did not injure himself while doing that work.   *Doc. 85, Ex. 1 at 6-8; Exs. 2; Ex. 3 at 2-3; Ex. 4.*

5.      On April 15, 2015, Davis filed a grievance alleging that Williams refused to give him permission to go to the infirmary for treatment of pain in his right foot.   *Doc. 2 at 23 & 44.*

6.      On April 16, 2015, Davis was taken to the infirmary.   Nurse Clowers gave Davis Naproxen for pain and allowed him to carry additional Naproxen so he could take it as needed.   *Doc. 85, Ex. 1 at 6.*

7.      On and after April 22, 2015, Davis received "no work" scripts while his right foot was healing.   *Doc. 85, Exs. 1 & 2.*

8.      On May 6, 2015, a second x-ray was taken of Davis's right foot.   After reviewing the x-ray and examining Davis's right foot, a non-party orthopedist recommended that:   (a) the fracture be surgically corrected; (b) Davis continue to use crutches; and (c) Davis be given Tramadol twice a day for pain.   *Doc. 85, Ex. 1 at 10-14; Ex. 2.*

9.      Between May 7 and May 22, 2015, Davis did not receive eight of the prescribed doses of Tramadol because the infirmary ran out of that medication. *Doc. 85, Ex. 1 at 56-57; Ex. 2.*

10.      On June 4, 2015, Nurse Gray asked Davis to sign a form acknowledging that he understood and agreed not eat or drink anything after midnight because he was scheduled to have foot surgery the following day.  Nurse Gray explained to Davis that the orthopedic surgeon required Davis to sign this form and that the surgery would be canceled if Davis refused to sign it.  Davis refused to do so and told Nurse Gray that the last time he signed a form he was sent to prison.  Davis then left the infirmary, and the surgery was canceled.  *Doc. 85, Ex. 1 at 15-21; Exs. 6 & 7.*

11.      On June 10, 2015, Davis returned to the infirmary complaining of right foot pain; requesting reevaluation for surgery; and seeking a renewal of his Tramadol prescription.   Nurse Clowers noted that the orthopedist had refused further treatment because *Davis canceled* the previously scheduled surgery.   Nurse Clowers then:   (a) submitted a request for a surgical consult with an new orthopedist; (b) gave Davis Naproxen, instead of Tramadol; and (c) ordered a third x-ray of his foot.  *Doc. 85, Ex. 1 at 21-26.*

12.      In July of 2015, a third x-ray revealed that Davis had an avulsion fracture of the fifth metatarsal, with mild displacement and intra-articular extension.

A non-party prison physician examined Davis and approved a second orthopedic consult.  During the exam, the physician noted that Davis ambulated with only a "mild limp" and that his pain was adequately controlled with Naproxen.  *Doc. 85, Ex. 1 at 27-30; Ex. 2.*

13.    On August 12, 2015, a new orthopedist examined Davis, reviewed his x-rays, and determined that surgical repair of his right foot was *unnecessary* because the injury was healing properly on its own.   The new orthopedist then recommended that Davis wear a walking boot on his right foot while his injury continued to heal.[3] Davis received a walking boot later that day.  *Doc. 85, Ex. 1 at 37-39; Ex. 2.*

14.    On August 17, 2015, Davis filed a medical request seeking a script excusing him from using the stairs while he was wearing the walking boot.   Nurse Clowers denied that request because it was not medically necessary for Davis to be released from using the stairs.  *Doc. 85, Ex. 1 at 40-42.*

15.    In September and October of 2015, Davis had two follow-up appointments with the orthopedist, who noted that Davis's foot fracture was healing well. The orthopedist instructed Davis to continue wearing the walking boot and recommended that he "decrease use of stairs as this seems to be *wearing out his boot.*"   Davis did not receive a "no stairs" script.    *Doc. 85, Ex. 1 at 43-47; Ex. 2.*

---

[3]    A portion of the ADC medical records *incorrectly* state that Davis had surgery on August 12.  *Doc. 85, Ex. 1 at 39-42.*   However, the parties *agree* that Davis *never* had surgery on his right foot.

16.     In November and December of 2015, a fourth x-ray was taken of Davis's right foot. After reviewing that x-ray and examining Davis's foot, the orthopedist determined that Davis's foot fracture had "healed."   The orthopedist told Davis he no longer needed the walking boot and released him from further medical care.  *Doc. 85, Ex. 1 at 53-65.*

## II.   Discussion

### A.     Analysis of Davis's Inadequate Medical Care Claims

Defendants argue that they are entitled to summary judgment, as a matter of law, on the inadequate medical care claim Davis has asserted against them.   The Court agrees.[4]

To prevail on his inadequate medical care claim, Davis must prove that:   (1) he had an objectively serious need for medical care for his right foot injury; and (2) Defendants subjectively knew of, but were deliberately indifferent to, that serious medical need. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).   Deliberate indifference, which goes

---

[4] Defendants also argue that they are entitled to sovereign immunity and qualified immunity. Because the Court concludes, as matter of law, that the facts, viewed in the light most favorable to Davis, fail to establish a constitutional violation, it need not address those alternative grounds for summary judgment.  *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 735-41 (2011); *Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009).

well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Here, there is *no evidence* that Defendants were deliberately indifferent to Davis's need for medical care for his right foot injury. The *undisputed facts* establish that: (1) Davis was taken to the prison infirmary within three hours of injuring his foot; (2) he was given an ace bandage, crutches, a walking boot, and pain medications; (3) over the following weeks, four x-rays were taken of his foot; (4) his foot was examined by two different orthopedists; (5) he was issued a "no work" script; and (6) he was scheduled for corrective surgery, which *he refused to have. See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding that no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Meuir v. Greene Cnty. Jail Emp.,* 487 F.3d 1115, 1118-19 (8th Cir. 2007) (finding no deliberate indifference when a prisoner refused medical care); *Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (finding no deliberate indifference when a prisoner refused to comply with the recommended course of medical care).

Finally, it is *undisputed* that, on December 23, 2015, a private orthopedist concluded that Davis's broken bone had *properly healed.  Doc. 85, Ex. 1 at 56.* Furthermore, a non-party physician has provided an Affidavit that makes it clear Davis received appropriate medical care for the broken bone in his foot.  *Id., Ex. 2.* Davis has not come forward with *any evidence* to refute those medical opinions. *See Reid v. Griffin,* 808 F.3d 1191, 1193 (8th Cir. 2015) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (same).

Thus, for the reasons explained below, each of the Defendants are entitled to summary judgment because *all* of the medical evidence overwhelmingly demonstrates that none of them were deliberately indifferent in treating Davis for the broken bone in his foot.  *See Meuir*, 487 F.3d at 1118 (explaining that, to defeat summary judgment, a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care).

1. **Captain Taylor**

Davis alleges that, on March 25, 2015, Taylor failed to provide him with constitutionally adequate medical care because he refused to allow him to immediately go to the infirmary after he injured his foot playing basketball.[5]  Here, it is undisputed that, within three house of his injury, Davis was taken to the infirmary, where a *medically trained nurse* agreed with Taylor's conclusion that Davis's foot injury was *not urgent*.  To avoid summary judgment, Davis "must place verifying medical evidence in the record to establish the detrimental effect" of the alleged three hour delay he experienced in receiving medical care for his injured foot.  *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006).  Davis has *not* produced any such evidence.

As a lay person, Taylor concluded that Davis's foot injury did *not* appear to be serious and that he did *not* need to be taken directly to the infirmary.  Accordingly, nothing about Taylor's decision can be construed to be "deliberate indifference" on his part to Davis's "serious medical need."  Furthermore, when

---

[5]  Davis alleges that Taylor violated ADC Administrative Directive 11-10 (which defines what is considered to be an "emergency," "urgent," or "routine" medical need) when he did not immediately allow him to go to the infirmary. *Doc 74, Ex. 9.* However, Davis does *not* have a constitutional right to force Taylor, or any other prison official, to comply with internal prison policies. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir.1997).  Instead, the relevant inquiry is whether any of the Defendants violated Davis's *constitutional rights*.

Davis was taken to the infirmary, three hours later, the nurse *agreed* with Taylor's lay opinion that Davis's foot injury did *not* appear to be serious.[6]  Accordingly, Taylor is entitled to summary judgment, and Davis's inadequate medical care claim against him should be dismissed, with prejudice.

### 2.    Captain Williams

Davis alleges that, on April 15, 2015, Williams was deliberately indifferent when she refused to allow him go to the infirmary for treatment of pain in his right foot.  However, it is *undisputed* that, on the following day, Davis went to the infirmary where he received a bottle of Naproxen, which he was allowed to keep on his person and take, as needed, for pain.  Davis has not produced any verifying medical evidence demonstrating that he was harmed by the one day delay in receiving that medication.  *See Hines v. Anderson,* 547 F.3d 915, 920-21 (8th Cir. 2008) (holding that unspecified delays in refilling the prisoners' various prescriptions did not rise to the level of constitutional violation); *Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993) (finding that a month long delay in refilling pretrial detainee's antidepressant prescription was not a constitutional violation).

There is *no evidence* that Williams's decision not to allow Davis to go to the infirmary on April 15, 2015 (which at most resulted in him being without Naproxen

---

[6]  As previously explained, only after an x-ray was taken of Davis's right foot was it finally revealed that he had broken a small metatarsal bone.

for one day) was motivated by her deliberate indifference. Accordingly, Williams is entitled to summary judgment, and Davis's inadequate medical care claim against her should be dismissed, with prejudice.

### 3. Nurse Clowers

Davis alleges that, on April 7, 2015, Nurse Clowers was deliberately indifferent when she failed to renew his "no work" script. However, during his deposition, Davis admitted that: (1) the infirmary was "busy" on April 7, 2015, and that Nurse Clowers seemed "distracted;" and (2) her failure to renew his "no work" script "might have been an oversight." *Doc. 85, Ex. 3 at 18; Moore,* 255 F.3d at 545 (explaining that negligence or even gross negligence is not enough to establish a constitutional violation; instead, there must be evidence of "deliberate indifference" which "requires proof of a reckless disregard of the known risk").

More importantly, Davis has produced no evidence that he was harmed by working for less than two hours a day on the nine days he was without a "no work" script. Furthermore, the Affidavit of a non-party physician states that Davis was physically able to complete his job assignments while using crutches and, that doing so, for nine days, did not adversely affect his prognosis. *Doc. 85, Ex. 2.* Finally, Davis's argument overlooks the important fact that *neither of the orthopedic specialist* recommended that Davis receive work restrictions. *Id.*

Davis also alleges that Nurse Clowers was deliberately indifferent when she failed to give him a "no stairs" script. However, on September 15, 2015, the orthopedist recommended that Davis "decrease," *not eliminate,* using the stairs because doing so was "wearing out his boot," *not injuring his foot. Doc. 85, Ex. 1 at 43.* This point is further substantiated by the Affidavit of a non-party physician which states that a "no stairs" script was *not medically necessary. Doc. 85, Ex. 2*

Finally, Davis alleges that Nurse Clowers was deliberately indifferent when she allowed him to miss eight doses of Tramadol. However, as previously noted, a temporary delay in receiving prescribed medications does not rise to the level of a constitutional violation. *Hines,* 547 F.3d at 920-21; *Ervin,* 992 F.2d at 150-51. Furthermore, in this case, it is *undisputed* that Davis was able to take Naproxen, which a non-party physician stated was an appropriate medication for Davis's foot pain. *Doc. 85, Ex. 2.*

Because there is *no evidence* that Nurse Clowers was deliberately indifferent when she failed to give Davis a "no work" script, a "no stairs" script, or eight doses of Tramadol, the Court concludes that she is entitled to summary judgment. Accordingly, Davis's inadequate medical care claim against Nurse Clowers should be dismissed, with prejudice.

### 4. Watson, Griffin, Kelley, & King

Davis alleges that Watson, Griffin, Kelley, and King were deliberately indifferent when they failed to take corrective action after reading his grievances and letters challenging the medical care he was receiving for his injured foot.

That claim fails, as a matter of law, because Davis has failed to come forward with any evidence demonstrating he received constitutionally inadequate medical care for his foot injury. In other words, Watson, Griffin, Kelley and King are entitled to summary judgment because there is no evidence that there was a constitutional violation that they should have corrected. *See Parrish v. Ball*, 594 F.3d 99, 1002 (8th Cir. 2010) (explaining that, to prevail on a corrective inaction claim, a prisoner must establish defendants failed to correct a known constitutional violation); *Sims v. Lay*, Case No. 05-2136, 2007 WL 328769 (8th Cir. Feb. 2, 2007) (unpublished decision) (holding that a corrective inaction claim fails, as a matter of law, when there is no evidence of an underlying constitutional violation). Thus, Davis's inadequate medical care claim against Watson, Griffin, Kelley, and King should be dismissed, with prejudice.

### B. Analysis of Davis's Retaliation Claims

### 1. Nurse Clowers

Davis alleges that, on April 7, 2015, Nurses Clowers refused to give him a "no work" script in retaliation for him filing grievances against her. To proceed to trial

on that claim, Davis must have evidence that: (1) he engaged in constitutionally protected activity; (2) Nurse Clowers took adverse action against him that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) retaliation was the "actual motivating factor" for the adverse action. *See Lewis v. Jacks,* 486 F.3d 1026, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

As to the first element, it is clear that Davis engaged in constitutionally protected activity when he filed grievances challenging the medical care Nurse Clowers was providing for his injured foot. *Lewis*, 486 F.3d at 1029 ("the filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity" sufficient to support a retaliation claim).

While a jury could find that the denial of a "no work" script could "chill" or deter a prisoner from exercising his right to file a grievance, the *undisputed facts* establish this is *not* what took place here. Rather, after Nurse Clowers failed to renew the "no work" script, Davis filed at least eight additional grievances complaining about the medical care she was providing for his foot injury. *Doc. 2 at 40, 48, 53, 57, 65, 72, 80 & 98.* In other words, regardless of Nurse Clowers's motives for not renewing the "no work" script, it clearly did *not* "chill" or deter Davis from filing more grievances against her.

Finally, Davis has not come forward with *any evidence* suggesting that retaliation was the "actual motivating factor" for Nurse Clowers's denial of his "no work" script. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (holding that a prisoner "carries a substantial burden to prove that retaliation was the actual motivating factor"). To the contrary, during his deposition Davis *admitted* that Nurse Clowers may have overlooked renewing his "no work" script because she was "distracted" by a very busy day at the infirmary. *Doc. 85, Ex. 3 at 18 & 57.* Instead of "affirmative evidence of a retaliatory motive," Davis bases his retaliation claim against Nurse Clowers on pure speculation, which is insufficient to defeat summary judgment. *See Lewis*, 486 F.3d at 1029 (holding that, to avoid summary judgment, a prisoner "must submit affirmative evidence of a retaliatory motive"); *See Cooper v. Schriro*, 189 F.3d 781,784 (8th Cir. 1999) (holding that "speculative or conclusory allegations cannot support a retaliation claim").

Accordingly, Nurse Clowers is entitled to summary judgment, and Davis's retaliation claim against her should be dismissed, with prejudice.

### 2. Nurse Gray

Finally, Davis makes the convoluted allegation that, on June 4, 2015, Nurse Gray wrongfully canceled his foot surgery to retaliate against him for filing grievances against *Nurse Clowers.* Davis has not explained why Nurse Gray would want to retaliate against him for filing grievances against someone other than herself.

*See Trapnell v. Ralston*, 819 F.2d 182,185 (8th Cir. 1987) (explaining that, to defeat summary judgment, a prisoner must have evidence of a retaliatory animus).

More importantly, however, the *only evidence in the record* is that the surgery was canceled because *Davis* refused to sign the form *required by his orthopedic surgeon* in order to proceed with the surgery. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (explaining that a prisoner must have evidence that retaliation was the "actual motivating factor," and that the adverse action would not have occurred "but for a retaliatory motive"); *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) (same).

Accordingly, Nurse Gray is entitled to summary judgment and Davis's retaliation claim against her should be dismissed, with prejudice.

## III. Conclusion

Based on the undisputed facts, each of the Defendants is entitled, as a matter of law, to summary judgment on all of the claims Davis has asserted against them. Accordingly, this case should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1. Davis's Motion for Summary Judgment *(Doc. 50)* be DENIED.

2. The Defendants' Motions for Summary Judgment *(Docs. 73 & 83)* be GRANTED, and that Davis's inadequate medical care and retaliation claims against

Defendants Kelley, Griffin, King, Clowers, Watson, Taylor, Williams, and Gray be

DISMISSED, WITH PREJUDICE.[7]

Dated this 2nd day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] During the screening process required by 28 U.S.C. § 1915A, the Court dismissed, dismissed, *without prejudice*, all other claims raised in Davis's Complaint.   *Doc. 8.*